The next case on the oral argument calendar is Gonzales v. Battelle, 25-1037. I have to make a note. Okay, I'm all set. Go right ahead. Good morning, Your Honors, and may it please the Court. My name is Kelsey Van Overloop from Littler Mendelsohn representing Battelle Energy Alliance, which I will be referring to as Battelle. This case turns on the district court's misunderstanding of several issues. The first is the regulation at issue. The regulation at issue here was 10 CFR 1046, not Section 712, the Human Reliability Program. It is the Court's misunderstanding of this key regulation that allowed Mr. Gonzales to fail to exhaust 1046's independent review process, yet still be permitted to submit his ADA claim to the jury, and that allowed judicial review to be applied to the decision that clearly implicates national security and is predictive. Why do you think the Court misunderstood the two certifications? Well, it's a confusing statute, Your Honor. It took me quite a while. No, no, no. I don't mean that. I mean, what indication is that he misunderstood them? I think the biggest indication is him saying that 1046 doesn't implicate national security when he was ruling on the Rule 50 motion. Well, let me just push back on that because it took me a while to figure it out. I had to drill down pretty hard on the regulations, and 1046 strikes me as much more limited. What I wound up shorthanding, and it's too abbreviated, that strikes me as a physical fitness test. Maybe a physical fitness test on steroids, but a physical agility test and fitness admittedly with a psychological component, but the other, the HRP, is a security clearance. It includes a background check. It includes a polygraph. It includes inquiring into foreign contacts. It's a really different analysis, and it seems to me that the District Court understood that quite well. I disagree respectfully, Your Honor. Okay. What's the indication in the record that the court misunderstood the purpose of the two regulations, please? Of the two regulations? Uh-huh. That's the point you're making, right? Yes. Okay. That I believe it was permeating throughout the trial that the focus of every witness was HRP when Mr. Gonzalez was decertified under 1046. This is discussed explicitly when he's discussing the Rule 50B motion on the first day of trial, and I disagree with you, Your Honor, that 1046 is simply a... I agree it's not simply a physical fitness test. I was just trying to, for purposes of conversation, recognize that it is, I think, significantly more limited when we drill down on those regs. It is predictive, which is a key... Yes, but it has to be predictive of a national security concern. Justice Kavanaugh talked about this in one of his other cases and talked about this is the highest level security clearance that DOE has if we're talking about HRP. And I do have the question for both of you about why people spent so much time at trial on HRP. I appreciate you raising that because that's not, very clearly, not the provision that Battelle relied upon to terminate this employee. But I think, I'm guessing that the reason it was, I think, twofold. One is that that process was not completed by Battelle. And had Battelle wanted to go that route, it certainly would have had to consult with the DOE. The DOE is the one who gave him that security clearance at the outset. And I think it's because he's arguing pretext. Isn't that why he invoked both of them? So the reason that HRP was the focus is because that's what Mr. Gonzalez understood the whole time. He testified that he didn't understand that 1046 was even involved until much later in the case. But that's not what Battelle thought. As early as July of 2018, Dr. Magnin raised the fact that this chronic opioid use invoked both HRP and 1046. 1046 is predictive. I also dug into the regs quite a bit on this too. And it's different. If you look at Hale v. Johnson, so that's a case that's where they found that Egan didn't apply. And that was what you're talking about. That's the strictly physical attributes. That was a pulmonary function test. But here we have a case where we have something that's predictive, where we're looking forward. When you look at 1046.26, the except— Can I stop you there?  So you can aim to this. I understand what predictive means, but it has to be, for Egan, it has to be predictive of a national security concern, as opposed to his ability to physically undertake the position. The regulation itself explicitly talks about national security. If you look at 1046.17E3, it talks about the day-to-day functions of an SPO. Each SO must possess the knowledge, skills, and abilities necessary to protect DOE security interests from theft, sabotage, and other acts that may harm national security. It's explicitly in the regulation. The same is true of section 1046.11F-G. An SPO must be able to support the pursuit and recovery of a department's security interests. The primary role is to recapture, pursuit, and or recover DOE security interests. Now I know my friend took issue with the fact that I cited Cleghorn v. Harrington, but that case explicitly talks about how 1046 is connected to national security. We don't want a terrorist attack at a nuclear facility, but the entire reason that 1046 exists is to ensure that the security force is able to complete the essential functions with or without accommodation to protect our nuclear reactors and where nuclear things are stored. Can I ask you, you mentioned with or without accommodation, and I want to make sure I'm understanding your asterisk there. Is it correct that, and maybe uncontested, that 1046 requires accommodation pursuant to the ADA? So I think this was another issue that the court got wrong. The court saw that the ADA was mentioned in 1046.2 and said, well, it's just completely incorporated. That's not the case. Accommodations are required under 1046, but 1046 itself states the essential functions. It states that if you are not certified under 1046, you cannot meet the essential functions of your role with or without reasonable accommodation. That is in the definition of medical certification at 1046.3. So 1046.13C requires accommodation, reasonable accommodation only, but you're not disputing that? No, I'm not saying that accommodations don't come into play, and Bataille did attempt to accommodate Mr. Gonzalez here by offering him roles he was qualified for. The accommodation he was asking for is to do the essential functions of the job while chronically using opioids, and the decertification itself considers that. It says that you cannot do the essential functions of your job with or without accommodations. So the certification is the qualification under the ADA. The 1046 has not incorporated the qualification requirement of the ADA. It has only incorporated the accommodation requirement. The next issue, Your Honor, is that 1046 is a threshold requirement. It means that you cannot meet it. If you cannot meet it, you are not a qualified individual. If you don't agree that EGAN applies, the language of the statute itself says that you are not qualified. So how, then, can you submit an ADA claim to a jury if the statute says by finding you are decertified, you are not qualified? The theory is pretext. It's a regarded as claim, definitely. But where... I don't hear that acknowledged in your argument. Can you help back up and explain? Sure. So because the jury found that they did not discriminate him on the basis of his back injury, that it was a regarded as claim, his whole theory is that they were going down the HRP road. It didn't... They didn't like what they were getting for other people on HRP, so they quickly switched to 1046 because they don't like opioid addicts. That's his theory of the case. I was just translating when you said they. You mean Mr. Gonzalez thought that his employer didn't proceed with the review process under HRP, which would have required that they send this to DOE. And his theory, I think you're referring to this, is that then they switched to 1046. Yes. All right. Now I'm caught up to you. Now you're with me? I'm sorry. My pronouns, Your Honor. It's okay. It's the pronouns make it sound. But I'm with you. Go ahead. So, to say that it's all on pretext is to ignore the requirements of 1046 and EGAN. Well, the difficulty... Forgive me for interrupting, but the difficulty is the jury knew very well that DOE had given him what I'm calling the security clearance. That's my shorthand under HRP, and that he performed the job for many, many years, right, until there was this revocation. And I think the jury heard that there had been two positive drug tests, but that would have been... And after those drug tests, he was recertified, because there hadn't been any reports of him not being able to do the job, right? So it was up to the jury to decide the reason for the termination, and that entailed the reason for revoking the 1046, right? So could you respond to that? So there's two answers to that, Your Honor. First, the jury isn't the one who should be making the decision. If you believe that EGAN applies, which we do, then this case... What's your best case that EGAN has ever applied to a 1046? I don't see one at all. This is a decision not made by an agency counsel, as you know, of course. And so it strikes me that you're asking for a significant expansion of EGAN, but please tell me if I'm wrong. I do think you're wrong, Your Honor, respectfully. That's okay. Because of Bataille. I know Bataille is not a 1046 decision, but that is a case where the Air Force delegated basically a security clearance to a private contractor, and when the private contractor withdrew that access, that decision was found to be an agency decision. The same is what happened under 1046. But it's not 1046. So can we just be clear that I don't think you have a case where this has ever been applied, EGAN's ever been applied to a 1046 before I... That was the question. I just want to get that before we move on. Mm-hmm. Is that a yes? Yes, you don't have one? Because I can't find one. There is not a case where this... There's only cases where it applies to HRP. When I get that you want this to be the first, I'm just trying to make sure I'm not missing one. So then go to the next, if you would. Because I think you're insisting that your client, the DOE delegated this to your client the way it had been delegated in the Boeing case. The way it had been delegated in the Boeing and in the DOT cases. But where's the... Here, DOE expressly reserved the authority. They didn't delegate. No. That's not entirely true, Your Honor. Okay, so what's the best showing... Help me out with this point. Yes. Where does it tell me that DOE delegated this authority to your client, please? So, it's under the... Just like with the DOE, where the statute delegates authority to the Department of Transportation, the enforcing statute delegates authority to the DOE. Within 1046, starting at 1046.1, the DOE has delegated to its contracting force the ability to manage and evaluate its protective force. I certainly appreciate that there's delegation to DOE pursuant to the statute. Where does... Has DOE delegated to your client? In 1046.1 and 2. Okay. And it has delegated to it because the DOE cannot do all the things that is required by 1046. 1046 defines what the PPMD is. It defines who... What's a PPMD? Sorry. The physicians that make the decision about decertification. They are the... You have almost as many initials as an environmentalist. I know. There are a lot here. It's the military and environmentalists. Yes. But I've got a glossary, so it's okay. Go ahead. I'd like to reserve some time, but... We're going to give you a little more time. Okay. Thank you, Your Honor. We've taken a lot of your time with my questions. So go right ahead. I appreciate it, Your Honor. So by delegating this authority to both evaluate its protective force and have the protective force through its government contractors, it's acting exactly as Boeing was on that Air Force contract. So beating applies. I also think MARI versus National Geospatial Intelligence Agency is helpful here because there it lays out a three-part test to apply to these regulations and stuff. Give me that case file. Sure. 142F4-428. It's also cited in our brief. It's a Fourth Circuit case. Hang on one second. I thought I read every one of them. 142F4-what? 428. I'll make sure that I have. Okay. Go ahead. And it lays out the elements that you consider when applying EGAN, which is, does the agency derive its authority from the executive? Yes. Here, Battelle derives its authority from the fact that it works with the DOE to provide a protective force. Second, the decision implicates national security. The text of the regulation itself discusses national security explicitly. And third, does the decision involve predictions about someone's future content? Here there are explicit references to will not endanger, what will happen in the future. The fact that the jury heard things that had happened in the past, that Mr. Gonzalez had never had an issue, that is not what 1046 asks. Each time a protective force member comes before a medical officer, they have to decide. Go looking to the future. Can this person do the job? Thank you. Thank you. For planning purposes, when you come back, we'll put two minutes on the clock. I appreciate that. You're welcome. May it please the Court. My name is Deanne Casperson, and I'm here today on behalf of my client, Roman Gonzalez. This case is about Battelle substituting assumption for evaluation. The ADA allows employers, even in safety-sensitive roles, to act on actual risk. What it forbids is exactly what happened here. It presumed that a long-term employee who had no performance issues, no supervisory complaints, no issues of poor performance or behavior, and just assumed that he was a drug addict. Instead, the ADA requires that there has to be an objective, individualized evidence in order to support this. Well, they don't have to wait for an accident, that's for sure. And these are very sensitive areas. And they knew he was, opposing counsel says, a chronic user. He was taking a prescription to manage pain. So that allowed them to do what? Periodic drug testing, surely? Surely. Yes. So as he- If this new medical director had a concern about this, what were his options? Well, actually, he wasn't a new medical director. He came in as one of the additional doctors. Dr. Curtis was actually- No, I'm talking about- It doesn't matter. Just pick a doctor. I had to work for your client. There was a concern. What are they allowed to do? So if they have a legitimate concern, and Dr. Mangan expressed concern, he indicated that the drug tests were MRO negative. That means that they came in at really low levels. He knew he had a prescription. And so he marked them off as MRO negative. That's another acronym. What's MRO? It's Medical Review Officer. And that, Dr. Mangan was serving as that. He signed off on those two drug tests as negative. But he kept raising concern about the fact that Mr. Gonzales had this prescription and he thought he had too many pills that were being given to him. One part we do understand. Okay. My question is, what were the defendant's options, please? Yes. Their options, if they have a concern, and we didn't contest this, they can temporarily remove him from HRP. And we didn't have any objection to that. And then what happened? So after that, then they're supposed to do analysis. In fact, they told DOE that they would send him to be separately evaluated. They did do an MMPI because it was his second year and it has to be done every two years. It came back without any indication that there was addiction. And what they did, instead of actually evaluating or talking to his...  Hang on.  What was supposed to happen next? So what was supposed to happen next is they were supposed to investigate, evaluate. Then they prepare a report if they still have concern and they haven't resolved it. And they prepare that report and they submit it to DOE. And then DOE is supposed to take a look at that and decide whether this person should continue in HRP or not. My understanding is the regulation requires that the DOE manager make that decision if we're talking about HRP, which we're not. Because he wasn't fired pursuant to HRP, right? So they went with 1046. Well, I'm not sure I would agree that they didn't really fire him for that because what they... I appreciate that and I get that this is a pretext case, but I just mean they didn't complete that process, right? That didn't happen. They didn't complete that process, but they admitted in their briefing that without HRP access in place, plaintiff could not perform the central functions of his assigned job under 1046. And they admitted that these two regulations are combined. And yes, we did make the argument because of what happened with employee 165 where that got raised to DOE and DOE disagreed with Battelle's complete exclusion of having someone just not be able to work if they had a legal prescription for opioid medications. And so instead of preparing that report, what Battelle did is they held Mr. Gonzalez hostage. They said, unless you will sign this stipulation of understanding that we won't let you read beforehand, we will not certify you for HRP. And then when he said, I can't sign something that you won't let me read and I really want you to talk to my doctor because I have tried treatment after treatment and this is the only thing that works for me. I never take it while I work. I never take it within eight hours of coming to work. When you said treatment after treatment, for pain management? Yes. Yes. And Dr. Reinflusch testified about the painful injections that he had gone for, the other drugs that he had tried to use. I understand. And so instead of going forward and submitting this to DOE, and of course that's Battelle's obligation to do so, not Mr. Gonzalez's, they suddenly switch and say, oh, well, you're not qualified now under 1046. They never talk to his doctor. They never do any testing. They never send him out for this evaluation that they- Why isn't that an option for them? Why is that not an option for them? Why is that not an option for them? You have the authority to decertify under 1046, right? Unlike HRP. Well- So can I just understand your theory about why it was impermissible for them to proceed under 1046? Well, number one, our argument, obviously, is that it is pretextual. They're not DOE. They don't have- They didn't have to be DOE under 1046. I understand your first argument is it's pretextual, right? Yes. What's your second argument? My second argument is that even under that regulation, they have to do- they have to have objective evidence because they're still subject to the ADA. They don't get to just do 1046 without still being subject to the ADA. Can you tell me about that latter point? On the ADA, I think you cited a different provision when you said that 1046 has to accommodate, meaning the employer has to accommodate pursuant to the ADA. And I don't know why you aren't relying on both of you. 1046.13c, you seem to point out, both of you, 1046.2. I think- Something I'm missing about 1046.13. Are you familiar with that provision or am I- I am taking a look at that, and I think I am. And that, I think, still requires- I'm not sure that it references specifically the ADA, but I think it talks about the specificity and the objective evidence that you need. All right. So, at any rate, that's a question of law. We can probably handle that given what we do for a living. So your position is when they went forward under 1046, they were required to talk to his doctor, do a medical evaluation, or what? Why wasn't their concern enough? So our position is that they're still subject to the ADA, just like any other private employer. They have to have this objective evidence. They know that he has performed the job for years. He has followed the same regimen. We know that Dr. Curtis, just in May, just a few months earlier, certified him. And now, without even looking at his records or talking to his doctor or taking, you know, any other kind of objective qualification, like maybe evaluation by a third-party physician for any kind of addiction concern, they just decide that he's decertified. And the difficult part of this is that- I mean, I think it's kind of ironic that Battelle argues that somehow Mr. Gonzales didn't exhaust 1046 when he's not given any of the provisions of that regulation. He has 10 days. That's it. They've sat on the HRP for months, never prepared the report, never took it to DOE, never gave him a chance there, and yet they want to say, well, Mr. Gonzales, it's your fault because you didn't appeal and you could have. And the bottom line is, I don't think this is about what DOE would or wouldn't have done. This is about what Battelle did. Without any objective evidence, they just decided that he was a drug addict. And that is not allowed under the ADA. I think it is. I think that what they could have done is decide they have a real security risk and they could have completed the HRP process. That would require DOE making the decision, right? Yes. Again, they don't have to wait for an accident. And that's why I want to be clear to say that it seems to me more limited than what you're describing. But they could have gone through the 1046 process, but that requires a true evaluation and accommodation. It does. That's a question. Am I misunderstanding this? No, I think you understand it correctly. HRP would allow, I mean, in both regulations, DOE reserves its right to be the final decision maker. And the problem that we have under 1046 is without him getting notice of his appeal rights, that 10 days, of course, was long gone by the time he ever knew about it. What's your best argument that EGAN does not apply to 1046? My best argument is they're a private contractor. Just like the amount of private contractors that contract with the government, I mean, this exception would swallow the rule. And I think Beatty or Beatty, the Boeing case, I think is the single exception where a private employer came under that EGAN rule. And that was... But that was an express delegation. It was an express delegation because they had a specific contract to allow them to do the security clearance. Now we do have the HRP cases that fall under EGAN as well because, again, DOE has reserved that right and... But if an agency is making a security clearance determination, you would agree those are not justiciable claims? I would agree. Okay. Now, I do think there's a narrow point here because I think you could have a situation where the contractor still had a regarded as claim and they submitted false information. And I'm really talking about the Zanolli exception where you might have a situation that wouldn't require that you challenge the agency merits. But if you're going to challenge the merits of the agency decision, then I would agree, yes, EGAN applies and would bar it. I haven't really let my colleagues get in a word edgewise. Do you have questions? I don't think so. Is there further argument? Yeah, the only thing that I wanted to address too was just the case that we submitted in our 28J letter on the exhaustion because I think that case is really important in terms of not inferring some kind of exhaustion requirement or looking to see the kind of remedies that are available under the two different statutory schemes. We received your 28J. Okay. Thank you for that. Can I take you back to your 1046 argument for a second?  Why can't the contractor make a decision that the employee is a drug addict and that that is a valid basis upon which to discharge it or, yes, discharge him? Are you claiming that that is pretextual in this case? I am arguing that it's pretextual in this case. Are there cases where they have kept people on oxycodone in their employee even though they have the same or greater amount of oxycodone in their blood than did Gonzales? The only other probably situation we have would probably be employee 165 that his levels when he... But in 165 they went through the HRP process with DOE. So you're saying that the failure to go through with the DOE process as they did in 165 is an indication of pretext for their use of 1046? Yes. Okay. I've got you. Yes. Anyway, at the end of the day, we think this clearly is a pretextual... Is there any evidence that you can remember as to the explanation by Battelle why they did not use the DOE process under HRP and only 1046? They did not explain it at all. They didn't... Have they explained it in their briefing here? I don't believe so. The only thing that they've explained... I'll ask Battelle that. They have, you know, admitted that those two, HRP and 1046, are inextricably intertwined, I think, is the words that they used. And so by not following that process, it really limited Mr. Gonzalez's ability to contest it. Before you leave the microphone, on the reinstatement, the briefing suggests that part of the claim may be moot, that your client is back at work, but I don't know. He is back at work, but he was reinstated, but they have now disqualified him under 1046 again. But at least this time, he got the appeal rights, and so we're going through that process. So I'm not going to go there because that's beyond our record. I was asking about whether reinstatement here is moot. Is your position that's a yes on this case? It is. Thank you. Okay. That's what I needed to understand. Anything further, Judge Asai? Judge Bay? I guess not. Thank you. Are there any other cases besides Gonzalez where Patel has disqualified or fired an employee who's on oxycodone without going through DOE? So in the other comparator that they pointed to, Osley, that's briefed, he was taken off HRP and decertified under 1046, both. And then the reason he was allowed to stay an employee at Bataille is because he had been injured on the job and was given specific workplaces. I don't think you're answering my question. Oh, I'm sorry, Your Honor. My question is, are there any other cases where without a DOE, without a report to DOE, without DOE action, the employee was terminated for oxycodone use other than Gonzalez? Osley. Osley was taken, he was both taken, HRP was taken off and 1046. So and they do. And it was submitted to DOE. I think that's Judge Bay's question.  Concentrate on 1046. Forget DOE.  Any other employees who were discharged solely on a 1046 determination because of the use of oxycodone and were not reported to DOE? Under HRP. Yeah. And not Osley. I don't know the answer to that, Your Honor. I can submit supplemental briefing if you'd like it. I would like to point out that they do run in parallel. So these are evaluations that are taking place at the same time. They could have run in parallel with Gonzalez. They were also, I'm sorry. They could have run in parallel with Gonzalez. You could have treated him the same way as 165 or Osley. They were running in parallel. They began talking about 1046 as early as July while the HRP discussion was going on. It is a complicated regulatory scheme. So people were confused, especially Mr. Gonzalez when he was having these discussions. But to say that he wasn't evaluated under 1046 is simply incorrect. It's not that they were going through HRP and then quickly switched. They had the same evaluation that Dr. Clark did, which is what they take issue with. The same psych evaluation is done in both instances. They don't send employees to do the same drug testing, the same medical certification. They're all happening in parallel. So to say... Counselor, now you're way over your extra time. No, no. If you could just wrap up. Yes. I think we understand that point and it's in the briefing that the same was used in both. We got that. But if you could wrap up. Yes. I'd also like to say that Mr. Gonzalez was provided with the information about how to do an independent review. That's at 8 ER 1329. That's not accurate. And also in our reply, we discussed the fact that Batai never conceded that it was because of HRP that we terminated his employment that was because of 1046. So with that, I will rest on my briefs and thank you for your time today. Thank you for your careful briefing, both of you, and for your argument. We'll take that case under advisement and stand in recess today.
judges: BEA, CHRISTEN, DESAI